DOERNBECHER MANUFACTURING CO., PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 14387, 19152.　Promulgated March 27, 1928.

*O. A. Neal, Esq.*, for the petitioner.
*Shelby S. Faulkner, Esq.*, for the respondent.

251

**OPINION.**

ARUNDELL: Section 326 (a) of the Revenue Acts of 1918 and 1921 provides that the term " invested capital " means the " actual cash value of tangible property, * * * bona fide paid in for stock or shares, at the time of such payment." By the terms of section 325 (a) of the same Acts, notes are tangible property.

We are satisfied that the promissory notes were bona fide paid in for stock and need not discuss that phase of the issue. To establish the value of the notes at the time they were paid in for stock petitioner relies primarily on the testimony of J. C. Ainsworth, presi-

252

dent of the United States National Bank of Portland, Oreg., who was familiar with the financial affairs of the petitioner, as well as of Green and John. We quote from his testimony somewhat at length:

Q. If that corporation had made a demand on Mr. John and Mr. Green for the payment of these notes would your bank have considered loaning them a sufficient amount to take up the notes?
A. We agreed to find the money for them. I don't think our own bank could have loaned that sum.
Q. Did you ask Mr. Green and Mr. John for a financial statement?
A. No.
Q. Do you know what property either of them had outside of this stock of the Doernbecher Manufacturing Company?
A. No.
Q. You didn't?
A. We didn't care.
Q. Now, this loan that you would have made to these two gentlemen, what collateral would you have asked for that loan?
A. We would have loaned it on their—on that same stock based on our knowledge of their ability to successfully operate the business.
Q. But you would have asked for the stock as collateral, wouldn't you, in making the loans?
A. Well, it wouldn't have made any difference as far as we are concerned, because we knew that their ability to earn it was there.
Q. Well, then, wasn't your loan based upon what you thought this stock was worth?
A. Yes, sir.
Q. And not their ability to pay independent of this stock?
A. No, under other management we would not have loaned this money.
Q. The reason you would have loaned to these men was because you considered the Doernbecher Manufacturing Company stock very valuable, didn't you, under their management?
A. Yes, sir.
Q. When you make statements as to the financial condition of Mr. Green and Mr. John, it is based upon what you thought this stock was worth, isn't it?
A. Yes, sir.
Q. And not upon their independent ability to pay outside of that?
A. If they hadn't any interest in the plant they wouldn't have had the ability to pay.

Concerning the face value of the notes here in question, Ainsworth testified as follows:

Q. Knowing the financial condition of the corporation and the holdings of Mr. Green and John therein, would you have considered the notes which they gave to the corporation in payment for this stock worth face value?
A. Yes, sir.
Q. Would you have considered the notes of Mr. Green and Mr. John for $250,000 each to the Doernbecher Manufacturing Company good and collectible notes?
A. Yes, subject to a slight discount if they wanted any cash on a loan.
Q. That is, if they wanted to sell them?
A. Yes, sir.

A fair reading of the above testimony convinces us that the opinion of the witness was based on what he believed to be the value of the stock to be acquired by the notes rather than the ability of Green and John to pay those notes, based on their financial responsibility at the time the notes were given, and before these men became the owners of the additional shares.

The Board has recently had before it practically the identical question here raised in the case of the *Columbus Canning Co.*, 10 B. T. A. 1085. In our opinion therein we stated as follows:

In considering the value of the notes we must also exclude the value of the stock purchased with the notes and pledged as security for their payment. It would seem evident that a corporation does not increase the value of its assets or increase its invested capital by increasing its capital stock. Until it receives property of value in exchange for such stock, its assets remain the same. If the corporation issues its stock for notes which in themselves have no value, there is still no increase in the value of the assets. Such value is not increased by pledging the stock so issued as security for the payment of the notes, for the only thing of value which it has received for its stock is such stock. If it does not increase its assets by issuing its own stock to itself, it does not do so when it receives such stock as the only thing of value in payment therefor. The notes can be paid only out of such security and the value of such security can be realized only from the assets already existing. The net worth of the corporation is the same as it was before the transaction took place. Only the amount of the outstanding capital stock has been increased and the effect is the same as that of a stock dividend; it serves to decrease the value of each share but not to increase the value of the assets.

It is said that the corporation could borrow on such collateral notes. The answer is that it is not borrowing on any value existing in the notes but is borrowing on its own stock. This is only another way of saying that it is borrowing on its own credit, as reflected in the credit value attaching to its stock. To permit the value of the stock so sold and pledged as security for the notes to be used to measure the value of the notes, would be to include in invested capital the value of the assets back of the stock, which have already been once included to the full amount allowed by the statute.

It follows from the foregoing that we must look to something other than the value of the stock to be acquired in determining what, in fact, was the fair market value of the notes when paid in for petitioner's stock. We are satisfied that the notes given in December, 1919, had a value and in our findings of fact we have placed that value at $175,000. In reaching that conclusion consideration was given to the evidence that at the time the notes were executed in December, 1919, Green was the owner of 250 shares of petitioner's stock on which he still owed Doernbecher $27,000; John owned 250 shares of petitioner's stock which was fully paid for and in addition owned property worth $50,000; Beach's wealth was $2,500, represented by cash on hand. We have found that the shares of stock in the Doernbecher Manufacturing Co. were at that time worth not less than $363 per share.

Inasmuch as Green, John, and Beach received for their notes given in December, 1919, shares of stock in petitioner worth not less than $363 per share when received, and throughout the following year, their financial responsibility at the time the notes were given in April, 1920, was not impaired by reason of the earlier obligations and for that reason we believe the additional notes at the time they were paid in in April, 1920, were worth not less than $175,000, as set forth in the findings of fact. It follows from the foregoing that petitioner's invested capital should be increased by $175,000 from December 6, 1919, and by an additional $175,000 from April 15, 1920.

Reviewed by the Board.

*Judgment will be entered on 15 days' notice, under Rule 50.*